UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JAMES CODY MCMAHON #709622** | **CASE NO.  3:23-CV-00779 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN CAMPBELL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

REPORT & RECOMMENDATION

Petitioner James Cody McMahon ("Petitioner"), a prisoner in the custody of Louisiana's Department of Corrections proceeding pro se, filed this Petition for Writ of Habeas Corpus on approximately June 9, 2023, under 28 U.S.C. § 2254. [doc. # 1].  Petitioner attacks his conviction for one count of unlawful use of a social networking website and the three-year imprisonment sentence imposed by the Fourth Judicial District Court, Ouachita Parish, State of Louisiana.[1] Petitioner has also moved for summary judgment.  [doc. #10].

For reasons assigned below, **IT IS RECOMMENDED** that Petitioner's claim and motion be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

## Background

The Louisiana Second Circuit Court of Appeals ("the Second Circuit") recounted the facts of the instant matter as follows:

> McMahon was charged by amended bill of information of one count of unlawful use of a social networking site in violation of La. R.S. 14:91.5.  At the time of his charge, he was on supervised probation for an indecent behavior with a juvenile conviction.  During a visit with his probation officer, Amanda Peoples, he was asked to submit to a random drug test.  Before the drug test, he was asked to submit his cell phone for a search.  Officers found applications for Facebook, Snapchat,

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Twitter, and Instagram on his cell phone. Officers then requested a search warrant to search McMahon's phone, including social media accounts, emails, and chats on any social media accounts.

On February 10, 2020, McMahon filed a motion to suppress prior to the start of voir dire. He argued his phone "was seized and searched without a warrant and without probable cause or reasonable suspicion in violation of the Fourth Amendment" and his consent to search the phone was coerced. The parties agreed that the motion would be heard on the merits.

During trial, Deputy Peoples testified that as a condition of McMahon's probation, he could not have social media accounts. She stated that she reminded him of this when she would visit his home but did not personally review this condition with him in 2016 when he was convicted.

Deputy Peoples testified that on August 6, 2019, she decided to give McMahon a random drug screen. She stated that when he was going through the metal detector, he had to place his cell phone on the counter. She testified that when he set his cell phone down, she told him she would like to look at it. She stated that she asked him if there was anything on it he was not supposed to have, he said no, and she had him unlock the passcode on the cell phone. She stated that he did not hesitate to put the passcode into the phone.

Deputy Peoples testified that after McMahon typed the passcode, he handed her his cell phone, she looked at the phone, and it was "quite obvious" that he had Facebook and Snapchat icons. She testified that when she asked McMahon if he knew he was not supposed to have social media accounts, he said he did know that.

Deputy Stacy Morrison testified that she is in charge of sex offender registrations for Ouachita Parish. She stated that individuals who come through her office are required to fill out a sex offender contract, which outlines rules and prohibits the use of social media. She stated that when an offender first comes to her office, she explains the rules. Deputy Morrison was shown a copy of McMahon's sex offender contract and verified that he initialed the bottom of every page, signifying that he understood all the rules.

Officer Corey Bennett testified that he is a supervisor for probation and parole for the State of Louisiana. He stated that he originally set up McMahon's case in 2016 and supervised him from May of 2017 until sometime in 2019. He testified that he reviewed the rules of probation with McMahon. He stated that the rules include a prohibition on social media use and provide for an inspection of computers and electronic devices. He testified that in sex offender cases, cell phones are randomly checked. Officer Bennett stated that McMahon could have refused the search and put his cell phone in his vehicle.

> On February 11, 2020, while the jury deliberated, the trial court denied McMahon's motion to suppress. McMahon was found guilty by a unanimous jury of unlawful use of a social networking site. He was sentenced to three years at hard labor. McMahon appealed. His sentence was vacated, and his case was remanded on July 21, 2021. In that per curiam opinion, McMahon's sentence was vacated and the matter remanded for further proceedings because the trial court failed to rule on his motion for post-verdict judgment of acquittal and motion in arrest of judgment prior to sentencing. On July 28, 2021, the trial court held a hearing to correct the minutes. The trial court stated that McMahon's motion for post-verdict judgment of acquittal and motion in arrest of judgment had been ruled on. The trial court supplemented the record with transcripts of the sentencing where both motions were addressed and ordered the minutes be corrected to reflect the disposition of the motions.
>
> McMahon's resentencing hearing was held on December 30, 2021. At that hearing, the trial court discussed the remand from this Court. The trial court stated and defense counsel agreed that the motions had been ruled upon or waived at the prior sentencing. McMahon agreed on the record that his motion for post-verdict judgment of acquittal had been ruled upon. He then waived his motion in arrest of judgment and motion for new trial. McMahon stated he believed these motions were taken care of prior to his original sentencing. The trial court sentenced McMahon to his original sentence of three years.

*State v. McMahon*, 349 So.3d 654, 656-57 (La. App. 2d Cir. 2022).

Petitioner appealed his sentence to the Second Circuit, alleging that (1) Louisiana's Revised Statute 14:91.5 is "unconstitutional because it infringes on his First Amendment right to freedom of speech"; (2) the Louisiana Attorney General had not been properly served; and (3) the review of his phone constituted an unreasonable search and seizure. *Id.* at 657-63. On September 21, 2022, the Second Circuit affirmed Petitioner's conviction and sentence. *Id.* at 663.

The Louisiana Supreme Court denied Petitioner's subsequent Application for Writ of Certiorari on January 25, 2023. *State v. McMahon*, 354 So.3d 4 (La. 2023).[2] Five months later,

---

[2] Chief Justice Weimer wrote that he "would grant and docket the matter to resolve the perceived split in our circuit courts of appeal regarding the constitutionality of La. R.S. 14:91.5." *State v. McMahon*, 354 So.3d at 4-5. *See infra* for a discussion of the circuit split among Louisiana's intermediate appellate courts.

3

on May 22, 2023, the United States Supreme Court denied Petitioner's request for Writ of Certiorari. *McMahon v. Louisiana*, No. 22-7128, 2023 WL 3571576 (U.S. May 22, 2023). Petitioner did not file for post-conviction relief in the state court. Habeas Petition [doc. #1, p. 3].

Petitioner filed his petition for habeas relief ("the Petition") in this court on June 9, 2023. *Id.* at p. 1. The Petition is predicated on a single claim: "La. R.S. 14:91.5 is unconstitutional because it impermissibly restricts lawful speech in violation of the First Amendment of the U.S. Constitution." *Id.* at p. 5.

On June 26, 2023, the Court directed the Clerk to prepare summons and serve the Petition on the Warden of the Ouachita Parish Correctional Center, the Attorney General of the State of Louisiana, and the District Attorney for the Fourth Judicial District, Ouachita Parish (collectively "Respondents"). [doc. #4]. On August 8, 2023, Respondents filed their opposition to the Petition. Opposition to Habeas Petition [doc. #7]. Respondents do not assert that Petitioner failed to exhaust his state court remedies, but instead respond substantively.

Petitioner filed his reply on August 16, 2023. Reply to Opposition to Habeas Petition [doc. #9]. That same day, Petitioner moved for summary judgment. M/Summary Judgment [doc. #10]. The next day, on August 17, 2023, Petitioner also filed a response in support of his reply. Memorandum in Support of Reply to Opposition to Habeas Petition [doc. #12].

Respondents filed their opposition to the motion for summary judgment on September 7, 2023. Opposition to M/Summary Judgment [doc. #13]. Petitioner replied to the opposition on September 15, 2023. Reply to Opposition to M/Summary Judgment [doc. #14].

Briefing is complete. Accordingly, this matter is ripe.

**Discussion**

I. **Standard of Review**

*a.* *Summary Judgment*

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Accordingly, Rule 56 contemplates that a motion for summary judgment will sometimes be denied "because the facts [at issue] are genuinely in dispute" and at other times "because the law does not support the movant's position." *Dupree v. Younger*, 598 U.S. 729, 737 (2023). Judgment as a matter of law is appropriate only when a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party on the question at issue. *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 384 (5th Cir. 2017) (quoting *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013)); FED. R. CIV. P. 50(a). "This will only occur if the facts and inferences point so strongly and overwhelmingly in the movant's favor that jurors could not reasonably have reached a contradictory verdict." *Janvey*, 856 F.3d at 384-85 (quoting *Abraham*, 708 F.3d at 620).

*b.* *Habeas Corpus Relief*

Habeas corpus relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Under § 2254, a reviewing federal court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable

5

determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d)(1)–(2). "The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1)[-(2)], the record is limited to the one before the state court, even if the state court issued a summary affirmance." *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 180, 188 (2011)).

Under § 2254(d)(1), a question of law is "contrary to" clearly established law if the state court decision "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it resolves a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Neal v. Vannoy*, 78 F.4th 775, 783 (5th Cir. 2023) (quoting *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc)). "A decision involves an unreasonable application of federal law under [§] 2254(d)(2) if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.' The state court's decision must not just be wrong; it must be unreasonable . . . ." *Jackson v. Davis*, 756 F. App'x 418, 419 (5th Cir. 2018) (citations omitted). To pass this threshold, the "state court's ruling on the claim being presented in federal court" must be "so lacking justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Neal*, 78 F.4th at 783 (quoting *Langley*, 926 F.3d at 156); *see also White v. Wheeler*, 577 U.S. 73, 77 (2015). The Supreme Court has made clear that § 2254 "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *White*, 577 U.S. at 77 (citing *Burt v. Titlow*, 571 U.S. 12, 19 (2013)).

## II. Analysis of Claim

Petitioner's sole argument for habeas relief is that the statute under which he was convicted, La. R.S. 14:91.5, unconstitutionally restricts lawful speech in violation of the First

Amendment. Memorandum in Support of Habeas Petition [doc. #1-2, p. 5]; M/Summary Judgment [doc. #10, p. 1]. Petitioner relies on *Packingham v. North Carolina*, 582 U.S. 98 (2017), in which the Supreme Court found a North Carolina statute prohibiting registered sex offenders from accessing commercial social networking websites to be unconstitutional. He asserts that *Packingham* prohibits restrictions on registered sex offenders' use of social media similar to the restrictions imposed by La. R.S. 14:91.5. Memorandum in Support of Habeas Petition [doc. #1-2, pp. 6-9]. Respondents counter that *Packingham* does not apply to persons still serving a portion of their sentence and, thus, its holding is inapplicable to Petitioner as he was subject to supervision at the time of his conviction. Opposition to Habeas Petition [doc. #7, p. 9]; Response to M/Summary Judgment [doc. #13, p. 5].

   The statute at issue in *Packingham* made it a felony for a registered sex offender "to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." N.C. GEN. STAT. §§ 14-202.5(a), (e) (2015), *invalidated by Packingham*, 582 U.S. 98. The Supreme Court found the statute violated the First Amendment as it "foreclose[d] access to social media altogether," preventing users from "engaging in the legitimate exercise" of their free speech rights. *Packingham*, 582 U.S. at 108. In reaching this conclusion, the Court offered two observations worth noting in the instant matter. First, the Court cautioned that its holding "should not be interpreted as barring a State from enacting more specific laws than the one at issue." *Id.* at 107. Writing for the Court, Justice Kennedy noted that "it can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." *Id.* Second, the Court suggested that part

7

of its concern with the North Carolina law was the "unsettling" limitations it imposed upon "persons who have completed their sentences." *Id.* at 108.

The Fifth Circuit took up the applicability of the *Packingham* holding in *United States v. Halverson*, 897 F.3d 645 (5th Cir. 2018). In that case, the defendant – Halverson – pleaded guilty to possession of child pornography and was sentenced to 60 months imprisonment followed by a lifetime of supervised release. *Id.* at 649-50. One of the conditions of Halverson's supervised release was a prohibition on accessing internet-capable devices without specific prior approval of a probation officer. *Id.* at 657 n.6.[3] The Fifth Circuit emphasized that the "driving concern" of the *Packingham* court had been "the imposition of a severe restriction on persons who had served their sentences and were no longer subject to the supervision of the criminal justice system." *Id.* at 658 (citing *Packingham*, 582 U.S. at 107 (explaining that "[o]f importance" to the Court was "the troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system" and that "[i]t is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences")). "Because supervised release [was] part of Halverson's sentence (rather than a post-sentence penalty) . . .

---

[3] The text of this condition reads as follows:

> You shall not subscribe to any computer online service, nor shall you access any Internet service during the length of your supervision, unless approved in advance in writing by the United States Probation Officer. You may not possess Internet capable software on any hard drive, disk, floppy disk, compact, disk, DVD, diskette, magnetic tape, or any other electronic storage media, unless specifically approved in advance in writing by the United States Probation Officer.

*Id.*

and because [the court's] review [was] for plain error," the Fifth Circuit found that *Packingham* did not "'plainly'. . . apply to the supervised-release context." *Halverson*, 897 F.3d at 658.

Of import, the *Halverson* decision is not an outlier. Rather, the proposition that *Packingham* applies to post-sentence penalties alone was endorsed by other federal appellate courts both prior to and after that decision. Indeed, the *Halverson* court cited two decisions from its sister circuits that informed its analysis. These are a D.C. Circuit opinion that held, "at least for purposes of plain-error review, that *Packingham* does not apply to a supervised-release condition, because such a condition 'is not a post-custodial restriction,'" *Halverson*, 897 F.3d at 658 (quoting *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017)), and a Second Circuit decision that emphasized the restriction at issue in *Packingham* "extended beyond the completion of a sentence." *Halverson*, 897 F.3d at 658 (quoting *United States v. Browder*, 866 F.3d 504, 511 n.2d (2d Cir. 2017), *cert. denied*, 583 U.S. 1075 (2018)). The Eighth and Eleventh Circuits have also adopted the view that *Packingham* only applies to post-sentence penalties. *See, e.g.*, *United States v. Carson*, 924 F.3d 467 (8th Cir. 2019) ("Because supervised release is part of a defendant's sentence, *Packingham* does not render a district court's restriction on access to the internet during a term of supervised release plain error."); *United States v. Washington*, 763 F.App'x 870 (11th Cir. 2019) (holding computer-use prohibition for convicted sex offender constitutional in part due to the defendant being under supervised release). The undersigned was unable to identify any federal appellate decisions that took a contrary view to the applicability of *Packingham*. *But cf. United States v. Eaglin*, 913 F.3d 88, 97 (2d Cir. 2019) ("[T]he imposition of a *total internet ban* for the [duration of the defendant's] supervised release is substantively unreasonable . . . ." (emphasis added)); *United States v. Holena*, 906 F.3d 288 (3d Cir. 2018)

9

(noting in dicta that "[u]nder *Packingham*, *blanket* internet restrictions will rarely be tailored enough to pass constitutional muster" (emphasis added)).[4]

In the instant case, Louisiana's Second Circuit mirrored the analysis of the *Halverson* court and rejected Petitioner's contention that La. R.S. 14:91.5 is unconstitutional. The court emphasized several key considerations in reaching this decision. First, it found that where the North Carolina statute in *Packingham* applied to all registered sex offenders, the Louisiana statute applies only "to those required to register as a sex offender *and* have been convicted of certain enumerated crimes." *McMahon*, 349 So.3d at 660; *id.* (finding limited list of sex offenses to which La. R.S. 14:91.5 applies "has the effect of narrowing the statute so that the prohibition on social networking sites does not apply to every registered sex offender as the North Carolina statute did). Second, the Louisiana statute does not prohibit usage of websites whose "primary purpose [is] dissemination of the news" or websites of governmental entities, carve-outs that were not present in the statute overturned by *Packingham*. *Id.* Finally, where the North Carolina statute prohibited *access* to websites, the Louisiana law only prohibits *use* of covered sites. *Id.* at 661. The Second Circuit emphasized that these distinctions "speak directly to the concerns" of the *Packingham* court that covered individuals "would not have access to sources of current events, checking employment ads, and 'exploring the vast realms of human thought and knowledge.'" *Id.* (quoting *Packingham*, 582 U.S. at 107).

After a review of law and the undisputed facts, the undersigned finds that the Second Circuit's holding was neither contrary to clearly established federal law nor an unreasonable application of that law. The differences between La. R.S. 14:91.5 and the statute at issue in

---

[4] As discussed *supra*, La. R.S. 14:91.5 does not impose a blanket internet restriction.

10

*Packingham* – namely narrowed coverage of individuals, applicability to websites, and prohibitions on conduct – substantively address the constitutional defects of the North Carolina statute. Furthermore, as stated by *Halverson*, the *Packingham* decision is limited to post-sentence penalties. "Probation, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.'" *United States v. Knight*, 534 U.S. 112, 119 (2001) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)); *see also United States v. Winding*, 817 F.3d 910, 916 (5th Cir. 2016) (quoting *Knight*, 534 U.S. at 119) ("[P]robationers do not enjoy the absolute liberty to which every citizen is entitled."). An individual on probation subsequently convicted under La. R.S. 14:91.5 is outside the bounds of the *Packingham* holding. Petitioner is just such an individual.

Petitioner's arguments to the contrary do not undermine this finding. First, Petitioner argues that this body of caselaw is irrelevant as La. R.S. 14:91.5 "is not a condition of probation, parole, or supervised release," but rather a statute. Memorandum in Support of Reply to Opposition to Habeas Petition [doc. #12, p. 2]; *see also* Reply to Opposition to Habeas Petition [doc. #9, pp. 1-2]; Reply to Opposition to M/Summary Judgment [doc. #14, p. 1] ("*Halverson* deals with a direct challenge of a condition of supervised release, while this case deals with a direct challenge of a Louisiana statute."). It would be inapposite to find that the Second Circuit unreasonably applied the dictates of *Packingham* as it is clear that case only applies to post-sentence penalties, and Petitioner was convicted under La. R.S. 14:91.5 in the context of his probation (i.e., while still subject to the terms of his sentence). With regards to a facial challenge to La. R.S. 14:91.5, it was not unreasonable for the Second Circuit to find that the differences between that statute and the one at issue in *Packingham* are sufficient to cure the constitutional defects of the latter.

Petitioner also cites to *State v. Mabens* from Louisiana's Fourth Circuit Court of Appeals, which held there was "no material difference between the North Carolina statute at issue in *Packingham* and [La. R.S. 14:91.5]." No. 2016-K-0975, 2017 WL 11714140, at *4 (La.App. 4th Cir. July 5, 2017). There are three reasons the *Mabens* decision does not impact the conclusion that the Second Circuit's holding was not contrary to, nor an unreasonable application of, federal law. First, it predates the Fifth Circuit's *Halverson* decision, which clarified the limited application of *Packingham*. Second, and flowing from the first point, the *Mabens* court does not account for the limitation of *Packingham* to the post-sentence penalty context. Finally, the *Mabens* decision from Louisiana's Fourth Circuit serves only of persuasive value to the Second Circuit which considered Petitioner's direct appeal.

The Second Circuit's decision was not contrary to clearly established federal law, nor did it involve an unreasonable application of that law.[5] It would thus be inappropriate to grant habeas relief in this case. Additionally, as the law does not support Petitioner's position, summary judgment is also inappropriate at this time.

Accordingly, the claim fails, and Petitioner's motion for summary judgment should be denied.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Petitioner's motion be **DENIED**, Petitioner's claim be **DENIED**, and the petition be **DISMISSED WITH PREJUDICE**.

---

[5] The undersigned notes that Petitioner's argument about the lack of clarity regarding the applicability of *Packingham* to statutes applied to sex offenders on probation or supervised release is a valid concern, but the federal court's limited review under § 2254 does not allow it to reach the concern under the facts set forth in this matter.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 20th day of February, 2024.

                                                                    _____
                                                                    Kayla Dye McClusky
                                                                    United States Magistrate Judge